[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 593 
The agreement given by the plaintiff's intestate to the defendant upon the postponement of the sale by the latter, was not an estoppel upon the plaintiff. It merely bound the intestate to take care of the property until the day of sale, and produce it at that time, and in the mean time not to interfere therewith by virtue of his mortgage. There was no agreement by the intestate to abandon his claim to the property or concession of the right of the sheriff thereto, and, of course, nothing done by the latter upon the faith of any such agreement or concession. The description of the property contained in the mortgage was sufficient to cover the stone, and also the goods belonging to the mortgagor in the store at the time. That description, after fully pointing out the stone mortgaged, proceeded as follows: "and all other stones belonging to me, and all other goods and chattels, now in my store, etc., all in the town of Saugerties." This embraced all the goods of the mortgagor in the store at the time. (Conkling v. Shelly, 28 N.Y. 360.) This brings us to the question whether the judge was correct in his charge to the jury that the mortgage was void as to the goods in the store, as the mortgage contemplated the sale of those goods by the mortgagee for his benefit. This question is only material as affecting the validity of the mortgage as to the stone, as there was no claim made by the plaintiff on account of those goods, although sold by the defendant on the same executions as the stone. The judge could not have referred to any clause in the mortgage authorizing a sale of the goods, as the clause in the mortgage giving the right of possession and use of the property to the mortgagor was equally applicable to the stone in question as to the goods. He evidently referred to the proof showing the constant dealings of the mortgagor in the goods, selling portions thereof from time to time as his own, for his own benefit, with the knowledge and assent of the mortgagee, *Page 594 
thus evidencing an agreement that the mortgagor might so deal with the goods. The judge held that the evidence conclusively proved this, and hence his legal conclusion that the mortgage was void as to the goods as against creditors. This legal conclusion only need be examined, as the evidence, if not conclusively showing the above facts, tended strongly in that direction, and should have been submitted to the jury had it not been held conclusive by the court. The question then is, whether an agreement by the mortgagee made with the mortgagor, that the latter may sell for his own benefit and as his own, portions of the property covered by the mortgage, renders the mortgage fraudulent and void as to such portions. It would seem that the bare statement of the proposition would be sufficient to warrant an affirmative answer. A creditor, for the purpose of securing a debt, has the right to take a mortgage upon chattels from his debtor, and have the same in possession of the latter upon assuming upon himself the burden of showing that the transaction was in good faith, and without any intent to hinder, delay or defraud the creditors of the mortgagor, and by also complying with the other requisities of the statute.
If there is an agreement by the mortgagee that the mortgagor may sell or dispose of any of the property for his own benefit, it is established, conclusively, that the mortgage was given for some purpose other than that of securing a debt to the mortgagee, or of giving him any real interest in such property. It is evident that, as to such property, the mortgagee not having any real interest therein, such real interest remains in the mortgagor. Why, then, is the mortgage given upon such property? Evidently, the better to enable the mortgagor to enjoy the benefit thereof, at the expense of creditors. Were there no creditors of the mortgagor, there would be no object in giving or taking mortgages accompanied with such an agreement. It is, I think, clear that such an agreement shows that the mortgage was not made in good faith, and without a design to hinder creditors. There is no question of intention to be submitted to a jury. It already *Page 595 
appears that, as to such property, the mortgage was not designed by the parties as an operative instrument between them; and its only operation must be to the prejudice of others. The court should, as to such property, pronounce it void, for the reason that the evidence conclusively shows it fraudulent. In Edgell
v. Hart (5 Seld. 213), it was decided by this court that an agreement contained in the mortgage, authorizing the mortgagor to sell the property for his own benefit, vitiated the mortgage, on the ground of fraud. Surely, the circumstance that the agreement was in the mortgage can make no difference. The effect is precisely the same, whether the agreement is contained in or made separate from the mortgage — whether its existence is proved by writing, or otherwise. In all such cases, the inquiry is, did it exist? and, if so, the same judgment as to its effect should be pronounced. In Ward v. Lowry (17 Wend. 492), the same doctrine was applied, where the agreement was not contained in the mortgage. This case, although overruled by Smith v. Hoe
(23 Wend. 653), upon another point, has never been so, as to the point now in question. The same rule was announced by Judge DENIO, in Gardner v. McEwen (19 N.Y. 123), although the point was not passed upon by the court. See, also, Griswold v.Sheldon (4 Comst. 580). Conkling v. Shelly (28 N.Y. 360), and Miller v. Lockwood (32 N.Y. 293), are not in conflict with, but tend to sustain, the rule. It may, therefore, be regarded as settled, that an agreement between mortgagor and mortgagee, that the former may dispose of the mortgaged property to his own use, renders the mortgage fraudulent as to creditors, whether the agreement be contained in the mortgage or not. It would seem to follow, that, if such agreement as to the whole property covered by the mortgage avoided the entire mortgage, the same agreement as to a part of the property will avoid it as to that part.
The only remaining question is, whether, if the mortgage be fraudulent as to creditors, as to a part of the property mortgaged, it can be upheld as to the residue. As applied to this case, if the mortgage be fraudulent and void as to the goods in the store, is it valid as to the store? The judge *Page 596 
charged that it was; thus sharply presenting the point. In this, I think, he erred. The mortgage was one single instrument, given to secure one debt. To render it valid, it must have been given in good faith, and for the honest purpose of securing the debt, and without any intent to hinder or defraud creditors. This cannot be true when the object, in part, or as to part of the property, is to defraud creditors. This unlawful design vitiates the entire instrument. The unlawful design of the parties cannot be confined to one particular parcel of the property. Entire honesty and good faith is necessary to render it valid; and whenever it indisputably appears that one object was to defraud creditors, to any extent, the entire instrument is, in judgment of law, void. It is not at all analogous to a class of cases where it has been held that a part of an instrument, of itself valid, and not dependent upon other parts which are invalid, may be enforced. Here the fraudulent design, if it existed, destroys the foundation of the entire instrument. The judge should so have instructed the jury.
The judgment appealed from must be reversed, and a new trial ordered; costs to abide the event.