## In re VOLENCE.

(District Court, S. D. New York. November, 1910.)

CHATTEL MORTGAGES (§ 188*)—VALIDITY—FRAUD.

A chattel mortgage of fixtures used in conducting a store, and of the stock of goods therein, or which shall be brought therein to conduct the business, which provides that the mortgagor shall, until default, remain in possession of the mortgaged chattels, is fraudulent under New York law, because permitting the mortgagor not only to sell at will the mortgaged stock, but apply the proceeds to his own benefit; and the whole mortgage is void as against creditors.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 393, 404; Dec. Dig. § 188.*]

In the matter of the bankruptcy of Joseph Volence. Claim in reclamation of Vincent Volence. Heard on motion to confirm report of special master. Finding of special master set aside.

Holm, Whitlock & Scarff, for claimant.
H. & J. J. Lesser, for trustee.

HOUGH, District Judge. The facts in the matter, not being in dispute, need not be recapitulated. It is noted, however, that for

the purpose of argument it is assumed that Vincent Volence was, at the time of the creation of certain chattel mortgages, and still is, a creditor of the bankrupt; that in consideration of such existing and honest debt the bankrupt gave said chattel mortgages to the present claimant, who is his brother; that the mortgages in terms covered (in one case) "all the stock and fixtures, of every nature, form and description," in two grocery stores, and (in the other case) "all the fixtures and all other chattels now used in conducting [a certain other grocery business], also stock of goods, wares, and merchandise on said premises, or which shall be brought on said premises for the purposes of conducting the [grocery business]."

Both mortgages also provide that the mortgagor shall, until default, "remain and continue in a quiet and peaceable possession" of all the mortgaged goods. It may also be noted that a considerable time elapsed between the giving of these mortgages and the bankruptcy of Joseph Volence; that during that time Joseph treated the stock in trade of the grocery stores as his own, sold it, replenished it, and sold it again, devoting the proceeds of such sales to his own purposes, and not to the payment of the debts secured by the mortgages, and did this with the knowledge and consent of his brother, the mortgagee. The conclusion, apparently reached by the master, that this course of business began with the execution and delivery of the mortgages, and was intended by the parties, is irresistible.

It has been admitted that as to the shifting stock the mortgages are invalid and that they are to be considered as one mortgage. The question remains whether they can be held good as to the fixtures, which are found to have remained in situ from the time the mortgages were given until the bankruptcy of the mortgagor. The property sought to be mortgaged may be divided into three classes: (1) Fixtures and similar chattels. (2) Merchandise on hand at the date of mortgage given. (3) After-acquired personal property. It has been apparently thought by the master, and is now argued by counsel for the mortgagee, that although the instruments be ineffectual, if not void, as to shifting stock and after-acquired property, they may still be held valid as to the fixtures which were in existence at the mortgage dates, were specifically covered by the mortgage, and remained in the possession of the mortgagor or mortgagee until bankruptcy petition filed.

For this position reliance is placed on Zartman v. First National Bank, 19 Am. Bankr. Rep. 27, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083, and Burmeister v. Koster, 56 Misc. Rep. 373, 107 N. Y. Supp. 636. As is pointed out by Vann, J., in the case first cited (189 N. Y. 274, 82 N. E. 127, 12 L. R. A. [N. S.] 1083), there are two leading reasons why chattel mortgages have in many cases been pronounced invalid: (1) Because a man cannot grant what he does not own; and (2) because an agreement permitting a mortgagor to sell the mortgaged property for his own benefit and advantage renders the mortgage fraudulent as matter of law. Both of the cases relied upon by the mortgagee in this litigation relate to after-acquired property, and it is obvious, both upon reason and authority, that al-

though a man cannot grant what he does not own, yet if by one instrument he does grant what he does own, and attempts to grant what he does not own, no one is injured by enforcing the grant that was within the grantor's power, and disregarding the effort to do the impossible.

The case is quite different where a mortgagor goes through the form of placing a lien upon that which both he and the mortgagee intend shall, notwithstanding the formal hypothecation, be continuously used for the benefit of the very person who on the public records has granted the identical property to his creditor. It has always been held that such a transaction is a mere cover, a pretended mortgage; and the reasons for it were amply set forth long ago by Grover, J., in Russell v. Winne, 37 N. Y. 591, 97 Am. Dec. 755, who, inquiring into the propriety of such a transaction, asked:

"Why, then, is the mortgage given upon such property? Evidently the better to enable the mortgagor to enjoy the benefit thereof, at the expense of the creditors. Were there no creditors of the mortgagor, there would be no object in giving or taking mortgages accompanied with such an agreement (i. e., an agreement to sell without using the proceeds of sale to reduce the mortgage.)"

And the same doctrine was fully expounded in Southard v. Benner, 72 N. Y. 424, 430, where Allen, J., remarked:

"The question then is: Did the arrangement, if made as alleged, and carried out by the permitted sales of, and dealing with, the mortgaged property, necessarily invalidate the mortgage? Did it conclusively prove that the mortgage was fraudulent in law; that is, so conclusively establish the fraud that a verdict of the jury to the contrary would have been set aside as against evidence? Such an arrangement is incompatible with a mortgage designed only as security to the mortgagee. The dealing with the mortgaged property as merchandise by the mortgagor, and the sale of the same in the ordinary course of business as a merchant, with the consent of the mortgagee, necessarily destroys the value of the mortgage as a security, and makes it only available (if for any purpose) so long as this arrangement and dealing continues to protect the property from creditors and secure it to the mortgagor. Such a transaction is necessarily fraudulent."

See, also, Frost v. Warren, 42 N. Y. 204, and the notes to that case in book 5, p. 706, of Parsons' edition of the Court of Appeals Reports.

It thus appears that it is not only important to note the facts that mortgages of after-acquired property and of property permitted to be sold as his own by the mortgagor, without proper application of proceeds, are invalid, but to observe the reasons why their invalidity is declared. In the case of after-acquired property the basic reason is that a man cannot grant what he does not own; but in the case of property which may be sold at will by the mortgagor the fundamental proposition is that the whole transaction is a fraud, and a fraud of such obvious nature that, when the facts are once established no jury shall be permitted to infer an honest intent, when the law declares a dishonest intent inherent in the nature of the transaction. This is what is meant by the phrase "a fraud upon the law." Men frequently do things which they do not know to be wrong, but

which are as matter of fact so very wrong that the doers may not escape the charge of fraud upon the law, although they were individually innocent of wicked design, or ignorant of the consequences experience has shown to be inherent in their actions, or both. It must therefore be found that on the admitted facts the Volence mortgages were, as to the stock sold, not only invalid, but void ab initio, and when this finding is once made the language of Woodruff, J., in Russell v. Winne, supra (37 N. Y. 596, 97 Am. Dec. 755), is applicable:

"I think it entirely settled that, if a mortgage be one which, by reason of the fraudulent purpose and intent with which it is executed, is declared void by the statute, it is wholly void, notwithstanding it may include property as to which it would be valid if it could be regarded as a mortgage of that only. To speak more clearly, if a mortgage be given with the fraudulent intent to cover up and conceal from creditors a portion of the debtor's property, it is altogether void, notwithstanding it also includes land or other property in relation to which there is a bona fide intent to convey it as security for an honest debt, and no other purpose and intent. A mortgage, void in part as a violation of the statute, is void altogether."

No difference is perceived between a result produced by statute and one by general law as declared in decisions of authority. The doctrine of the case heretofore cited and relied upon is reasserted in Brackett v. Harvey, 91 N. Y. 214, which case has special reference to agreements for sale by mortgagor, not contained in the mortgage instrument itself, but resting in parol. The case as presented seems a hard one for this mortgagee, who has certainly diminished expenses by the method pursued in respect of the sale of the property.

The finding of the special master is set aside, and an order may be entered in accordance with this opinion. There will be no costs.